COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS





CHRISTOPHER THOMAS
WEINSTEIN,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.


§


 


§


 


§


 


§


 


§


 


 § 


No. 08-01-00016-CR



Appeal from the


199th District Court


of Collin County, Texas 


(TC# 199-80252-00)



O P I N I O N


 Christopher Thomas Weinstein appeals his November 2000 conviction for delivery
of a controlled substance. In four issues, he challenges the lack of corroboration to
accomplice testimony, the factual sufficiency, the trial court's improper restriction of cross-examination, and ineffective assistance of counsel. We affirm.

 I

 Appellant pled not guilty, waived a jury, and tried his case to the bench, apparently
to be able to qualify for probation. At the conclusion of the trial, Appellant was convicted
of the charged offense, delivery of a controlled substance, more than one gram, but less than
four grams of cocaine, within one thousand feet of a playground. The court sentenced
Appellant to six (6) years' confinement in the IDTDCJ.

 A confidential informant, Edwin Lynn Royal, worked for the McKinney Police
Department. Royal was at the time of trial serving concurrent sentences on a revocation of
probation for forgery and bond jumping. Working with Officers Gerald Rutledge and Randy
Vandertuin, Royal prearranged a drug transaction through a woman named Shelly. Police
wired Royal with a video device in his car and an audio device on his person. In the
apartment, Royal met Michelle Gardner and told Gardner he wanted to buy at least a one
hundred dollar piece of crack cocaine. Shelly went to another room of the apartment and
returned with some cocaine, which Royal refused to buy. Although Shelly instructed Royal
to wait while she checked, Royal followed her back to another room where Royal then saw
Appellant. Royal testified that Shelly told Appellant that Royal would "pay but 80 for it." 
Standing about twelve feet away, Royal initially testified Appellant said okay to the eighty
dollar offer. On cross examination, Royal testified he could only hear mumbling by
Appellant, but that Appellant had nodded his head in the affirmative to the eighty dollar
price.

 II

 In his first issue, Appellant argues the trial court erred by considering accomplice
testimony as evidence of guilt, absent corroboration. A conviction cannot be sustained upon
the testimony of an accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed. Tex. Code Crim. Proc. Ann art. 38.14 (Vernon
1979). The rationale behind this rule is that accomplice witnesses may often have incentives
to lie, such as to avoid punishment or to shift the blame to another. Blake v. State, 971
S.W.2d 451, 454 (Tex. Crim. App. 1998). Here the threshold question is whether or not the
undercover informant is an accomplice. 

 A person is considered an accomplice if he or she could be prosecuted for the same
offense as the defendant or for a lesser included offense. Id. at 454-55. Stated otherwise,
a person is an accomplice if there is sufficient evidence connecting them to the criminal
offense as a "blameworthy participant." Id. at 455; Jarnigan v. State, 57 S.W.3d 76, 89,
(Tex. App.--Houston [14th Dist.] 2001 pet. ref'd); see also Gonzalez v. State, 63 S.W.3d 865,
881-82, (Tex. App.--Houston [14th Dist.] 2001 pet. ref'd).

 It is settled that a "volunteer" working on behalf of a criminal investigation is not an
accomplice witness so long as he or she does not bring about the crime but merely intends
to obtain evidence to be used against those committing the crime. Jarnigan, 57 S.W.3d at
90, (citing Parr v. State, 606 S.W.2d 928, 929 (Tex. Crim. App. 1980); Alexander v. State,
325 S.W.2d 139, 140 (Tex. Crim. App. 1959); see also Bacon v. State, 762 S.W.2d 653, 656
(Tex. App.--Houston [14th Dist.] 1988, pet. ref'd)(witness, a private citizen, bought heroin
from defendant during police investigation).


 The informant, Royal, testified he was working for the McKinney Police. Police
furnished Royal the one hundred dollar funds for the undercover operation. Royal was
searched before and after the undercover operation and he had no drugs. After the
transaction, the drugs purchased with police money were turned over to police. Thus, there
is no evidence that Royal knowingly or intentionally delivered a controlled substance. Tex.
Health & Safety Code Ann § 481.112(a) (Vernon Supp. 2003). Accordingly, Royal could
not be prosecuted for the same crime (or a lesser included crime) and was not an accomplice. 
Blake, 971 S.W.2d at 454-55. Appellant's first issue is overruled.

 In a supplemental brief, Appellant cites a new corroboration statute from the Code of
Criminal Procedure. Tex. Code Crim. Proc. Ann. § 38.14 (Vernon 2002). This new law
was effective September 1, 2001, (after the trial). It delineates additional circumstances
requiring corroboration, when a person is acting covertly for law enforcement, and is not a
licensed peace officer or special investigator. Id. Thereunder, a non-peace officer's
testimony needs to be corroborated by other evidence tending to connect the defendant with
the offense committed. Id. "Corroboration is not sufficient for the purposes of this article
if the corroboration only shows the commission of the offense." Id. at (B). We do not
address this argument. Appellant candidly states the supplemental brief is in response to the
new amendment. Stated otherwise, the supplemental brief is not in response to Appellee's
brief. Therefore, we may not consider this to be "a matter in the appellee's brief" that
Appellant may address by reply brief in accordance with the permissible scope of the rules. 
Tex. R. App. P. 38.3; Barrios v. State, 27 S.W.3d 313, 322, (Tex. App.--Houston [1st Dist.]
2000, pet ref'd; cert denied 534 U.S. 1024, 122 S.Ct. 555, 151 L.Ed.2d 430, 70 (2001); see
also Campbell v. State, 68 S.W.3d 747, 765 n.1 (Tex. App.--Houston [14th Dist.] 2001)
(aff'd. 85 S.W.3d 176, 184-185 (Tex. 2002)).

 In his second issue, Appellant contends there was factually insufficient evidence to
link Appellant to the offense. Specifically he argues that under the Controlled Substances
Act, delivery of a controlled substance may be accomplished through actual transfer,
constructive transfer, or offer to sell (citing Conaway v. State, 738 S.W.2d 692, 694 (Tex.
Crim. App. 1987)). And that as a matter of law, these methods of delivery are mutually
exclusive. Id. at 694. Appellant argues the actual transfer or constructive transfer element.

 In determining the factual sufficiency of the elements of an offense, the reviewing

court "'views all the evidence . . . in a neutral light, and sets aside the verdict only if it is

so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.'" 
Johnson v. State, 23 S.W.3d 11, 7 (Tex. Crim. App. 2000) (citing Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996)). The court reviews the evidence weighed by the
jury that tends to prove the existence of the elemental fact in dispute and compares it with
the evidence that tends to disprove that fact. Id. We are authorized to disagree with the fact
finder's determination. Id. (citing Clewis, 922 S.W.2d at 133). This review, however, must
employ appropriate deference to prevent an appellate court from substituting its judgment
for that of the fact finder, and any evaluation should not substantially intrude upon the fact
finder's role as the sole judge of the weight and credibility given to witness testimony. Jones
v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). The complete and correct standard
a reviewing court must follow to conduct a Clewis factual sufficiency review of the elements
of a criminal offense, asks whether a neutral review of all the evidence, both for and against
the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the jury's determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. Johnson, 23 S.W.3d at 11.

 The elements of the offense of delivery of a controlled substance are: (1) a person;
(2) knowingly or intentionally; (3) delivers; (4) a controlled substance. Tex. Health &
Safety Code Ann § 481.112(a) (Vernon Supp. 2003). Constructive transfer occurs when
a seller transfers a controlled substance either belonging to him or under his control by some
other person or means at the direction of the seller. Cano v. State, 3 S.W.3d 99, 105 (Tex.
App.-- Corpus Christi, 1999, pet. ref'd). The State argues that the law of the parties may be
applied to the offense of delivery of a controlled substance. Tex. Penal Code Ann. § 7.01
& 7.02(a)(2) (Vernon 2003); Cano, 3 S.W.3d at 106. Under the latter theory, the State must
show the actual transferor committed the offense, and that the party encouraged, directed, or
aided in the commission of the offense. Id. As we described above, Appellant was in
another room of the apartment--where Royal purchased the cocaine from Shelly. Royal
testified Shelly told Appellant that Royal would not "pay but 80 for it." And Appellant
assented, nodding his head in the affirmative. The transaction was then completed, Shelly
took the money, gave the drugs to Royal, who in turn surrendered the contraband to police. 
The fact that Shelly needed Appellant's permission to sell at the lower price is supported by
Royal's direct testimony and circumstantially by Shelly's conduct. Shelly responded to
Royal's request for a hundred dollars worth of crack by leaving the room and returning with
the drugs. When Royal refused to pay a hundred dollars for the amount presented, Shelly
said she had to go check. She again left the room and had a conversation with Appellant. 
She told Appellant that Royal would not pay a hundred for the drugs. It was only after
Appellant consented, that Shelly returned to the other room and concluded the deal for eighty
dollars offered by Royal. Thus, a rational fact finder could have concluded that Appellant
was guilty as a party to the offense by actual or constructive transfer of a controlled substance
because Appellant encouraged, directed or aided Shelly in the commission of the offense. 
Cano, 3 S.W.3d at 103-06. Similarly, the trial court could have found Appellant
constructively transferred the contraband. See Hart v. State, 15 S.W.3d 117, 120 (Tex. App.--Texarkana 2000, pet. ref'd). Appellant cites Davila for the proposition that merely relaying
an offer from buyer to seller is insufficient to show delivery. Davila v. State, 664 S.W.2d
722, 724-25 (Tex. Crim. App. 1984). Although Davila was a constructive transfer case, the
court expressly noted that there the Appellant was not charged with being a party to the
actual transfer. Id. at 724. And as noted by Appellant, in Davila there was no response, as
here, to the offer to buy. Id. Davila is distinguishable. Appellant also cites Dawson v. State,
812 S.W.2d 635 (Tex. App.--Houston (14th Dist.) 1991, pet. ref'd). In Dawson the State
conceded that the evidence indicated that the deliverer, not Appellant, was the probable
"owner" of the cocaine. Id. at 637. Accordingly to have constructively transferred the
cocaine, the deliverer must have acted as Dawson's agent or under his direction or control. 
Id. There was no evidence that Dawson exercised any control over the drugs, and "[n]o one
asked the Appellant's permission to sell or display the drugs and no one acted in a manner
indicating that the drugs belonged to Appellant or under his control." Id. Dawson is likewise
distinguishable. Appellant's second issue is overruled.

 Next Appellant argues, that the trial court erred by curtailing cross examination of the
State's primary witness. The trial judge sua sponte ordered defense counsel to abandon
questioning of Royal concerning how much money he was being paid and how many
agencies he worked for. (1) In a second incident the trial court admonished counsel to stick
with matters germane to Appellant. At the time, however, defense counsel had just
concluded a voir dire examination of Mr. Royal and had just stated that he had no objection
to the photo line up. Defense counsel added he had nothing further.

 "Cross-examination is the cornerstone of the criminal trial process and, as such, a
defendant must be given wide latitude . . . to impeach [a witness's] credibility." Gutierrez
v. State, 764 S.W.2d 796, 799 (Tex. Crim. App. 1989). However, as the State counters, inter
alia, when evidence is improperly excluded as a result of the erroneous limitation of cross-examination, a three-step analysis is conducted. Love v. State, 861 S.W.2d 899, 904 (Tex.
Crim. App. 1993). To perform this analysis, we must review the excluded evidence. Id. 
Without any means to view what might have been excluded, the error, if any, is not
preserved. See id. at 901. Appellant's third issue is overruled.

 Finally Appellant contends his trial counsel was ineffective because he waived a jury
and allowed the trial judge to make his decision on uncorroborated accomplice testimony. 
To show that trial counsel was ineffective, Appellant must demonstrate that: 1) trial
counsel's performance was deficient because it fell below an objective standard of
reasonableness; and 2) a probability sufficient to undermine confidence in the outcome
existed that, but for counsel's unprofessional errors, the result of the proceeding would have
been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80
L.Ed.2d 674, 689 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). 
Strickland states that judicial scrutiny of counsel's performance must be highly deferential
and that a reviewing court "[m]ust indulge a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance . . . . " Strickland, 466 U.S. at
689. This case is typical because "the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel's actions." Mallet v. State, 65 S.W.3d 59,
63 (Tex. Crim. App. 2001). The record is silent as to why Appellant's trial counsel waived
a jury. It may well be the strategy was to attempt to obtain probation. Trial counsel should
ordinarily be afforded an opportunity to explain his actions before being found ineffective. 
Rylander v. State, 2003 WL 1535253 *6 (Tex. Crim. App. 2003) (not released for
publication). Based upon this record, we cannot conclude that Appellant has established that
trial counsel's performance fell below an objective standard of reasonableness in order to
satisfy the first prong of Strickland. Id. Appellant's final issue is overruled.

 The judgment of the trial court is affirmed.

May 22, 2003


 

 DON WITTIG, Senior Justice


Before Panel No. 5

Larsen, McClure, and Wittig, JJ.

(Wittig, J., sitting by assignment)


(Do Not Publish)

1. Indeed defense counsel was showing that even though Royal was a felon, he was paid one hundred dollars
per arrest and worked for different agencies. These type of paid for activities are exactly what the legislature was
addressing under the new Tex. Code Crim. Proc. Ann § 38.14 (Vernon 2002).