In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-06-01055-CR

NO. 01-06-01056-CR

____________


KENNETH DEWAYNE HAYES, Appellant

 

V.


THE STATE OF TEXAS, Appellee






On Appeal from the 56th District Court

Galveston County, Texas

Trial Court Cause Nos. 04CR3201 and 04CR3202 

 



 

CONCURRING AND DISSENTING OPINION

 The majority acquits appellant of the conduct leading to his conviction during
the second drug transaction, at the Citgo gas station, concluding that the evidence
presented at trial is legally insufficient to convict appellant of constructive transfer
of cocaine. It does so by reading Sims v. State to mean that constructive transfer
exclusively contemplates a transfer that does not ultimately vest actual possession in
the transferee, and can never include indirect participation in an actual transfer of
drugs to a third party. See Sims v. State, 117 S.W.3d 267 (Tex. Crim. App. 2003). 
The majority's interpretation in effect holds that appellant is not guilty of the second
drug transaction in this case because the evidence lacks a second intermediary, and
the drugs actually were sold to Agent Ramirez, the ultimate transferee. The majority
thus concludes that, even if appellant could be guilty of aiding and abetting an actual
transfer, his conduct is insufficient to find him guilty as a primary actor on a charge
of delivery by constructive transfer. Because Sims disavows such a restriction, and
instead upholds a conviction for constructive transfer when the defendant had either
direct or indirect control of the transferred substance, the evidence supporting the
conviction relating to the Citgo transaction is legally sufficient. I therefore
respectfully dissent from the judgment of acquittal in Cause No. 01-06-01055-CR,
involving the drug transaction at the Citgo gas station. I join the majority opinion in
affirming the conviction in Cause No. 01-06-01056-CR, arising out of the drug
transaction that took place at the Coastal gas station. 

 

 The evidence supporting the jury's verdict

 The evidence in this case that appellant participated in the second, Citgo
transaction is as follows: (1) appellant worked with Gaines to accomplish the first
transaction at the Coastal station, which involved Gaines and Agent Hall; (2)
appellant listened in the driver's seat of his car as Agent Hall "talked by [appellant]"
to ask Gaines, appellant's passenger, whether Hall could arrange another purchase in
the next 30 or 45 minutes; (3) in appellant's presence, Gaines provided a cell phone
number for Hall to call to arrange the second transaction; (4) appellant arrived with
Gaines at the Citgo gas station, the location that Hall and Gaines had arranged in
subsequent phone calls, using the phone number that Gaines had provided when he
was in the car with appellant; (5) appellant arrived at the Citgo station with Gaines
only after Hall called a second time to inform Gaines that Hall was parked in the
Citgo parking lot, ready to do the deal; (6) appellant then separated from Gaines and
acted in a "counter-surveillance capacity" during the transaction between Gaines and
Agent Ramirez (who was Hall's passenger for the second drug deal); and (7) DEA
agents observed appellant driving Gaines away in appellant's car shortly after the
transaction. 

 From this evidence, a reasonable jury could conclude that (1) appellant and
Gaines worked together to sell drugs, as evidenced by the first transaction; (2)
appellant knew that a second drug transfer was to take place, because the second
meeting was arranged in appellant's car in his presence and involved the same
intermediaries (Gaines and Agent Hall) who participated in the first transfer but a
different ultimate transferee (Agent Ramirez); and (3) appellant exercised indirect
control over the drugs entrusted to Gaines by providing the vehicle in which the
transaction was negotiated, arriving with Gaines at the appointed place and time, by
acting as a lookout for the transaction, and by driving Gaines away when the
transaction was complete. Thus, the State presented legally sufficient evidence that
appellant (1) had either direct or indirect control of the transferred substance, and (2)
knew that it would be delivered to a transferee because he was present for the
conversation Hall had with Gaines. See Sims, 117 S.W.3d at 269; see id. at 277
(noting that intermediary "not required" for constructive transfer, but that defendant
"must have contemplated that there would in fact be a third party transferee").

 Thus, I disagree with the majority's opinion that "there is no evidence in the
record before us from which the jury could have found that appellant ever had direct
or indirect control over the cocaine that Gaines transferred to Agent Ramirez." The
majority correctly observes that appellant neither negotiated with Agent Hall nor
handled the narcotics, and describes appellant's surveillance duties as "minimal
participation." Mere presence at the location of the transaction, perhaps even in a
"surveillance capacity," is insufficient evidence of indirect control. But here, other
evidence exists: appellant listened as the plan was made by the passenger in his car
with whom he had just conducted a drug deal, he arrived pursuant to the plan at the
appointed place, he aided the effort by acting as a lookout, and he drove the get away
car. It is true that no one saw appellant handle the drugs, but such is the case in every
transfer where the defendant exercises indirect control. And, though appellant did not
negotiate the deal with Agent Hall, appellant's actions facilitated its
accomplishment--he provided the premises (his car) where the negotiations took
place, later acted as lookout, and was the get-away driver. It then became for the jury
to decide, whether, given these facts, appellant exercised indirect control over the
narcotics. (1) Viewing the totality of the evidence in a light most favorable to the jury's
verdict, the evidence shows that appellant and Gaines together controlled the cocaine
sold in both transactions with Agent Hall.

 The aiding and abetting finding

 Relying on Sims, the majority holds that because Gaines effected an actual
transfer, appellant cannot be convicted as a party to a constructive transfer: "Because
there is no evidence that Gaines constructively transferred the cocaine to Agent
Ramirez, there is necessarily no evidence that appellant was criminally responsible
as a party to a constructive transfer by Gaines. . ."

 But the fact that the jury was given a charge on the law of the parties is not
meaningless, because Gaines's direct control of the drugs can be imputed to appellant
as an aider and abetter. See Sims, 117 S.W.3d at 271 (discussing prior decisions,
observing that "[D]irect or indirect control over the contraband--[is] a necessary
precondition for showing an actual or constructive transfer (absent the law of 
parties).") (emphasis added). To the extent that the evidence is deficient to show that
appellant had direct or indirect control of the drugs as a primary actor, he nevertheless
had control sufficient for the jury to convict him of aiding and abetting an actual
transfer--he was a party to the Gaines/Hall/Ramirez transaction. This evidence
supplies the control necessary to prove delivery by constructive transfer if the
question is one of direct or indirect control.

 The fact that Gaines completed the transfer to Agent Ramirez is not a bar to
appellant's prosecution for constructive transfer. Although the Court of Criminal
Appeals has held that the transaction need not be completed to sustain a conviction
based on constructive transfer, it never has held the converse: that a completed
transaction bars such a prosecution--rather, the court has merely held that "the
defendant must have contemplated that there would in fact be a third party transferee"
(here, Agent Ramirez, as set up in the negotiation with Gaines and Agent Hall). 
Simms, 117 S.W.3d at 277. Plus, the court has expressly held that an intermediary is
not required for all types of constructive transfer. Id. The evidence of the
conversation held between Gaines and Hall in appellant's presence to arrange a drug
transaction similar to the one the parties had just completed supports an inference that
appellant expressly contemplated a transfer to a third party--the fact that the parties
achieved fruition of the transfer does not make it any the less planned and the jury's
aiding and abetting finding, even assuming, as the majority contends, that it relates
to evidence of an actual transfer, sufficiently supports a finding of "direct or indirect
control." When coupled with evidence of knowledge of a future transferee (provided
by the conversation that took place in appellant's presence), the argument that
appellant is not guilty of delivery of drugs, as set forth in the statute, falters.

 As the Court of Criminal Appeals has observed in discussing the quandary the
appellate courts face in casting the facts of any particular delivery of narcotics as
either actual or constructive, sometimes the conflict is "more apparent than real." See
id. at 270. Here, the evidence presented is legally sufficient to support the jury's
verdict and the trial court's judgment, and we should so hold.
Conclusion
 

 I join the majority in affirming the judgment of conviction in Cause No. 01-06-1056-CR. The evidence is also legally sufficient to support the verdict and
judgment of conviction in Cause No. 01-06-1055-CR, and thus our court should
affirm that conviction too. I therefore respectfully dissent from the majority's
opinion and judgment of acquittal in cause number 1-06-1055-CR.

 



 Jane Bland

 Justice


 Panel consists of Chief Justice Radack and Justices Jennings and Bland.

 Justice Bland, dissenting in Cause No. 01-06-01055-CR. 

 Publish. Tex. R. App. P. 47.2(b).


1. The court of appeals' decision in Dawson v. State, 812 S.W.2d 635, 636 (Tex.
App.--Houston [14th Dist.] 1991, pet. ref'd) does not require an acquittal of
appellant's second conviction. In Dawson, the court of appeals reversed a conviction
based on constructive transfer when the defendant led an undercover officer to a man
who then negotiated a drug purchase. 812 S.W.2d at 637. The court held that such
evidence was legally insufficient because the defendant did not control the premises,
and no evidence showed that he exercised influence over the delivery. Id. In contrast,
here a jury could reasonably infer that appellant exercised some control, as the
negotiations took place in the car he was driving, and influence, as he appeared at the
later appointed time to assist as lookout in completing the transaction, and drove
Gaines away after it was complete. Similarly, the Court of Criminal Appeals'
decision in Davila v. State, 664 S.W.2d 722 (Tex. Crim. App. 1984) does not warrant
reversal. There, the defendant relayed a "cryptic" offer to purchase drugs, and no
other evidence existed that she had any control over the premises or the seller's
actions. Id. at 725. As discussed, here the negotiations took place in appellant's car,
indicating some control, and appellant later appeared to assist in completing the
transaction, facts not present in Davila. This case instead is similar to Swinney v.
State, 828 S.W.2d 254, 257 (Tex. App.--Houston [1st Dist.] 1992, no pet.) In
Swinney, this court held that the evidence was legally sufficient to sustain a conviction
for constructive transfer. Like the defendant in Swinney, here, the appellant was
present both when Hall initiated the transaction, and was present when it took place. 
See id., 828 S.W.2d at 258.