In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00155-CR
______________________________


DELVIN DARNELL JAMES, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 04-0014X


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â At the conclusion of voir dire at his trial for aggravated assault, Delvin Darnell James
challenged the State's use of peremptory challenges under Batson v. Kentucky, 476 U.S. 79 (1986). 
The trial court overruled his objection; the jury was empaneled, convicted James, assessed a sentence
of twenty years, and the trial court sentenced James in accordance with the jury's assessment. In his
sole point of error, James claims the trial court erred in denying his Batson challenge to the State's
use of its peremptory strikes against various veniremembers. We disagree and affirm the judgment
of the trial court. 
Batson Standard of Review
Â Â Â Â Â Â Â Â Â Â Â Â In Batson, the United States Supreme Court held that the State's purposeful use of peremptory
challenges in a racially discriminatory manner violated the Equal Protection Clause of the Fourteenth
Amendment to the United States Constitution. Article 35.261 of the Texas Code of Criminal
Procedure also specifically prohibits peremptory challenges based on race. Tex. Code Crim. Proc.
Ann. art. 35.261 (Vernon 1989).
Â Â Â Â Â Â Â Â Â Â Â Â A Batson review involves a three-step analysis. Williams v. State, 937 S.W.2d 479, 485
(Tex. Crim. App. 1996). The first step requires the complaining party to make a prima facie case
of racial discrimination. Id. (citing Purkett v. Elem, 514 U.S. 765, 767â69 (1995)). A prima facie
case of discrimination may be made by showing that the totality of the relevant facts gives rise to an
inference of discriminatory purpose. Batson, 476 U.S. at 93â96. After the complaining party
establishes a prima facie case, the second step requires the party that has exercised the strike to come
forward with a race-neutral reason for the strike. Williams, 937 S.W.2d at 485. This second step
does not demand an explanation that is persuasive or even plausible. Purkett, 514 U.S. at 767â68. 
If the proponent of the strike can produce a race-neutral reason, then in the third and final step, the
trial court must decide whether the opponent of the strike has proved purposeful racial
discrimination. Id. at 768; Ford v. State, 1 S.W.3d 691 (Tex. Crim. App. 1999). Further, once the
State proffers race-neutral explanations for its peremptory strikes, the burden is on the defendant to
convince the trial court that the State's reasons were not race neutral. Ford, 1 S.W.3d at 693 (citing
Camacho v. State, 864 S.W.2d 524, 529 (Tex. Crim. App. 1993); Tompkins v. State, 774 S.W.2d 195
(Tex. Crim. App. 1987)). 
Â Â Â Â Â Â Â Â Â Â Â Â In reviewing a Batson challenge, we review the record in the light most favorable to the trial
court's rulings and determine if the court's action was clearly erroneous. Williams v. State, 804
S.W.2d 95, 101 (Tex. Crim. App. 1991). A finding is clearly erroneous when, although there is
evidence to support the finding, the reviewing court is left with the definite and firm conviction that
the trial court committed a mistake. Whitsey v. State, 796 S.W.2d 707, 721 (Tex. Crim. App. 1989)
(op. on reh'g). The trial court is the fact-finder at a Batson hearing, and it is that court's responsibility
to weigh the evidence and determine the credibility of the witnesses. Tompkins, 774 S.W.2d at 202
n.6A. We therefore accord great deference to the trial court's rulings. Robinson v. State, 851 S.W.2d
216, 226 (Tex. Crim. App. 1991). If the exercise of even one peremptory challenge was racially
motivated, however, the entire jury selection process is invalidated and a new trial is warranted.
Keeton v. State, 724 S.W.2d 58, 65 n.5 (Tex. Crim. App. 1987); see Roberts v. State, 963 S.W.2d
894, 899â900 (Tex. App.âTexarkana 1998, no pet.).
Procedural History 
Â Â Â Â Â Â Â Â Â Â Â Â At trial, following voir dire and before the jury was sworn, James first made his Batson
challenge. During this brief hearing, the parties stipulated that James is an African-American. The
trial court held a short hearing on James' objection and denied relief. During the appellate process,
the State moved to abate the appeal alleging the record in the Batson hearing did not reflect the
race-neutral explanations for the State's peremptory challenge as to veniremembers 3 and 24. We
remanded the case for the trial court to conduct a Batson hearing and enter findings of fact and
conclusions of law regarding the race of veniremembers 3 and 24, and the State's reasons for
exercising peremptory challenges as to them. See Hutchison v. State, 42 S.W.3d 336 (Tex.
App.âTexarkana 2001), aff'd, 86 S.W.3d 636 (Tex. Crim. App. 2002). The trial court has now
conducted such hearing and has entered findings of fact and conclusions of law and determined that
the State did not engage in purposeful discrimination based on race in its exercise of its peremptory
challenges. The trial court found veniremembers 1, 3, 10, 14, 15, 24, and 35 were African-Americans within the range of eligibility for selection to the jury. The State used four of its
peremptory challenges against veniremembers 3, 10, 15, and 24; James peremptorily struck
veniremember 1. 
Original Batson Hearing 
Â Â Â Â Â Â Â Â Â Â Â Â At the original Batson hearing, the State explained its reasoning for striking veniremembers
10 and 15. The State explained that number 10 was struck because he wore sunglasses during the
voir dire examination. In explaining this strike, the State mentioned that it had also struck number
26, who was Caucasian, for the same reason.
Â Â Â Â Â Â Â Â Â Â Â Â The State gave as the reason for striking veniremember number 15 that the State wanted an
older jury to judge a case involving young persons "in a shooting over a drug transaction." Again,
the State explained that number 34, who was not identified as an African-American, was also struck
for the same reason. Later, the State claimed to have struck all veniremembers under the age of
thirty. 
Additional Batson Hearing on Remand
Â Â Â Â Â Â Â Â Â Â Â Â This Court abated the appeal, and the trial court held a Batson hearing regarding
veniremembers 3 and 24. The trial court found that veniremembers 3 and 24 are African-American. 
The State exercised peremptory challenges against numbers 3 and 24 in addition to the two African-American veniremembers discussed above.
Â Â Â Â Â Â Â Â Â Â Â Â At the second Batson hearing, the State testified it struck number 3 because of her personal
knowledge of James.


 Number 24 was struck because he did not have a high school education, as
was another non-African-American venire member. 
Batson Analysis
Â Â Â Â Â Â Â Â Â Â Â Â James and the veniremembers under discussion are African-American, so James met the
Williams requirement of showing a prima facie case for an allegation of racial discrimination. See
Williams, 937 S.W.2d at 485. The State presented its race-neutral explanations for the strikes used
on African-American veniremembers. The trial court found such explanations racially neutral. Now
we must review the trial court's finding that James failed to prove purposeful discrimination by the
State.
Â Â Â Â Â Â Â Â Â Â Â Â James relies on Keeton v. State, 749 S.W.2d 861, 868 (Tex. Crim. App. 1988), for support
of his argument that the State's race-neutral explanations were merely pretexts to hide the State's
racially-motivated ulterior motive, to wit: to remove African-Americans from James' jury. In
Keeton, the court stated that the State's race-neutral explanation "need not rise to the level of a
challenge for cause." Id. The court then provided, as illustration, ways the State could overcome
a presumption: "The state challenged non-black jurors with the same or similar characteristics as
the black jurors who were struck." Id. 
Â Â Â Â Â Â Â Â Â Â Â Â The State gave as its race-neutral explanation for striking veniremember 10 that he wore
sunglasses during the voir dire examination. This explanation has been considered as race neutral. 
See Alexander v. State, 866 S.W.2d 1, 8 (Tex. Crim. App. 1993). Additionally, no disparate
treatment is shown because the State also struck a non-African-American, number 26, for the same
reason.
Â Â Â Â Â Â Â Â Â Â Â Â Veniremember 15 was struck because of his age. The State explained it wanted an older jury
to judge a case involving young persons and a drug transaction. Age may be a legitimate neutral
reason for a peremptory challenge. See Brown v. State, 960 S.W.2d 265, 269 (Tex. App.âCorpus
Christi 1997, no pet.) (citing Silva v. State, 800 S.W.2d 912, 914â15 (Tex. App.âSan Antonio 1990,
no pet.); Moss v. State, 790 S.W.2d 731, 732 (Tex. App.âHouston [14th Dist.] 1990, no pet.)) (age
is an accepted criterion for peremptory challenges and does not violate Batson); Chivers v. State, 796
S.W.2d 539, 542â43 (Tex. App.âDallas 1990, pet. ref'd). However, an explanation as to why age
is important should be presented and closely examined. See Chivers, 796 S.W.2d at 543. Here, the
State explained why it considered the age of the jurors to be important. It also pointed out that it
likewise struck veniremember 34, a non-African-American, for the same reason. In his brief, James
claims the State did not strike veniremember 4, whose date of birth was March 28, 1974. James' trial
was held in October 2004, at which time veniremember number 4 was thirty years of age. The State
consistently struck all veniremembers under the age of thirty, regardless of race. James also
complains the State's claim of wanting an "older jury" is belied by the State's striking of
veniremembers persons in their late 40s and early 50s. However, James did not question whether
there were other reasons for the State to have struck these individuals. See Satterwhite v. State, 858
S.W.2d 412 (Tex. Crim. App. 1993) (appellant failed to carry burden of showing racial
discrimination where he did not cross-examine responding party and presented no evidence
suggesting that racially-neutral explanations were pretext for discrimination); see also Spencer v.
Murray, 5 F.3d 758, 764 (4th Cir. 1993) (petitioner "offered nothing to the trial court to show"
prosecutor's "stated reasons were pretextual or showed any evidence of discriminatory motive"). 
Â Â Â Â Â Â Â Â Â Â Â Â The State explained it struck veniremember 3 because she was personally familiar with
James, which is a race-neutral explanation. Personal acquaintance with a defendant is a traditional
basis for exercising a peremptory challenge. 
Â Â Â Â Â Â Â Â Â Â Â Â The State explained it struck veniremember 24 because he had no high school education. 
The State further explained it also struck veniremember 18 for the same reason. The juror
information card for veniremember 18 revealed that he had not completed high school. The rationale
given was that the case involved a shooting and medical records would be introduced (presumably,
the State was concerned about the jurors being able to read and understand the medical records). 
Such an explanation is race neutral. 
Â Â Â Â Â Â Â Â Â Â Â Â Failing to find the trial court's rulings on James' Batson challenge were clearly erroneous, we
overrule James' point of error and affirm the judgment. 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â August 1, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â November 8, 2005

Do Not Publish



nt-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") f1;
 mso-first-header:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-09-065-CR%20Graves%20v.%20State%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
-->











 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-09-00065-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  JAMES DIXON GRAVES, JR.,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 76th Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Morris County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial
Court No. 9909

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Justice Moseley








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUMÂ 
OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  James
Dixon Graves, Jr., appeals from his convictions by a jury in this cause on two
charges of possession of child pornography for which he received a sentence of
ten years in the Texas Department of Criminal JusticeÂInstitutional Division to
run concurrently with his other convictions.[1]Â  Graves has filed a single brief in which he
raises issues common to all of his appeals.Â 
He argues that the trial court erred in denying the following:Â  (1)Â his motion to suppress the evidence;
(2) his request for funds to hire an expert; (3) his request to have the victim
examined by the expert as to her disability and competency to testify; and (4)
his motion for mistrial.Â  Graves also
complains that the evidence was insufficient to establish that the victim met
the definition of ÂdisabledÂ under the Texas Penal Code.Â  

Â Â Â Â Â Â Â Â Â Â Â  We
addressed these issues in detail in our opinion of this date on GravesÂs appeal
in cause number 06-09-00063-CR.Â  For the
reasons stated therein, we likewise conclude that error has not been shown in
this case.

Â Â Â Â Â Â Â Â Â Â Â  We
affirm the judgment.

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Bailey
C. Moseley

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Date Submitted:Â Â Â Â Â Â Â Â Â  February
5, 2010

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  February
24, 2010

Â 

Do Not Publish











[1]Graves
appeals from judgments entered in cause numbers 06-09-00063-CR through
06-09-00070-CR.Â